Deere is entitled to a new trial, a fair trial where the case is resolved based on the merits. That's because the trial court erred in allowing the defendants to introduce evidence that is irrelevant and prejudicial through argument, through questions, and through trial testimony. Counselor, the district court ruled that the court would not prohibit reference to the failure to follow all applicable references. The court said, I will rule on this issue on a question-by-question basis. And it seems to me that you stopped objecting after a while. Not at every instance. In fact, in most of the instances where these allegations of inequitable conduct came up, or references to inequitable conduct, or lack of candor, or whatever, that you didn't object all the time. That's correct. Why didn't you make a request like a continuing objection to the entire inquiry? Well, we think if you look at Rule 103, and you look at the different perspectives the court could look at for the purpose of making a judgment about whether we preserved our objections, the second example is the definitive decision by the trial court. The judge said he would go question-by-question. It wasn't question-by-question to see if it was relevant. It was question-by-question to see if they could develop facts to show inequitable conduct. So he was going question-by-question where the defendants would present facts on inequitable conduct to try to build a case for inequitable conduct. But all the time, in your view, it's building in your argument now, every one of those questions added to the prejudice aspect of the jury. It did. That's correct. That was intended to do that. That is, if we objected to – if you look at 103A, you can object to a question or a statement or a stray remark, and you want to preserve your objection, you object. Then you object again. But this wasn't a stray remark. This was a theme. And our motion in limine was to attack the theme, to say they shouldn't be able to present evidence of inequitable conduct. But your motion is in limine for that purpose. If they put us on notice before the trial that they were going to try to argue this, we could have presented it to the judge before trial, but we didn't have the opportunity. So we argued in our motion that the whole theme is irrelevant and prejudicial. We're entitled to rely on Rule 102 for that purpose. Well, the question is whether it's clear that those were inappropriate references. The question is how prejudicial were they? What's the evidence that they're prejudicial? Well, we can give you one example of how prejudicial it was. The last time we were here, the defendants had one theory of non-infringement, that is, the Bushhaug defendants did. They argued that the upper deck wall did not connect to the lower deck wall, was not secure to the lower deck wall. They lost that, and we went back on remand. They had no new argument on non-infringement. They went to trial with no defense on non-infringement. They didn't identify any argument in the pretrial order. As we went to trial, they offered no evidence on non-infringement, didn't call any expert witnesses to testify on non-infringement. In closing argument, counsel for Duroc presented two theories at A4682, Volume 3. What page was that, counsel? 4682. In 4681, counsel for Duroc addressed requests for admissions. We had filed before the trial, even before the appeal up here the first time. And he said, we admitted facts to narrow them for you. This is page 4681, line 6. We admitted facts to narrow them for you. We admitted facts because we were being candid, candid with the court, candid with our open to opposing counsel, candid with you so you don't have to look any further. Then on page 4682. Now who's making these comments? Mr. Martin. Okay. 4682, the first full paragraph reads, so if you go through these, you have a W structure that connects the decks. You have another W structure, you have vertical structures, not sloped structures that connect the decks. I won't go, I know you did see this in some detail during Mr. Parrish's cross-examination, but you didn't have the slope that's interrupted by a vertical space. That particular thing, before I go to the Buckmore patent, that particular thing defeats infringement and it defeats infringement with regard to the word sloped. That's the first notice we had that they were arguing that we failed to show sloped in the defendant's accused products, that is the Busch Art products. The other thing that defeats infringement, this is one of those issues that Deere just wants it both ways, is the torsional stiffness. It's definitely true that 2715 has torsional stiffness. That's the accused product from the box section. Deere has never done any measurement of that. It's equally true, by the way, the M&W does. So Deere wants to have it one way or the other. They can't have it the other way for the opening. So he's arguing two theories of non-infringement, slope and torsional stiffness. If you look at the request for admission to be filed in Volume 3, page 5080 to 5083. You look at page 5083, request number 25. Admit that each of the accused product deck sections has torsional stiffness. Response admitted. So he went on to tell the jury that this was just a technical, let's see, he said 4681. Go on. 4681. Talking about technical defenses. These are technical defenses in line 22. We're talking about technical defenses. These are technical defenses that words matter. So what he did, he told the jury that they have two defenses to non-infringement. Lack of proof of slope and lack of proof of torsional stiffness. But that's the first time in trial that we learned that during this closing argument. They did not preserve it before. They didn't put us on notice of it. That's good evidence of the prejudice that we suffered as a result of the misconduct by counsel. If you find that we did not preserve the objection by receiving a definitive decision by the court, you can still find plain error. And the plain error would be introducing this evidence of inequitable conduct without having pled it.  Judgment is a matter of law on a number of issues. One is infringement, the reason I just set out. That is, we went through the trial offering testimony and evidence that the defendant's products infringed. The defendants had no defense to it, offered no affirmative evidence other than argument of counsel. We're also entitled to judgment as a matter of law and no anticipation. The verdict on anticipation depended on clear claim construction, but the court construed upper deck walls had no limitation on size. We think that's wrong. Let's go back a little bit to what you were saying about the arguments that were made for the first time regarding the slope and also the torsional stiffness. Right. And you're saying you were prejudiced by those arguments being made for the first time. Right. Without evidence being presented. But does that go to the issue that you have fully briefed and that's here before us today, dealing with the lack of candor and the references that were made to inequitable conduct? It does because they had no defense based on infringement, and yet they took the case to trial and the theory that they must have had was that they would poison the jury and went on non-infringement because the jury was poisoned to not trust the credibility of Deere's witnesses. If you go back and look at the misconduct of offering evidence on what prior art was before the patent office, let me follow up with two things. If you look at the Grave Reef, the very first quote that we cite is page 3. This would be after the judge said that he would go question by question, and we think it was irrelevant question by irrelevant question. Counsel for Great Plains stood up and said to the witness by the name of Debra Harrison. Debra Harrison was an engineer at Deere who had already testified by the time of this question that she played no role in the patent prosecution, no role in deciding what prior art was going to be sent to the patent office. The question is, isn't it true? And it's true, isn't it, that Deere didn't tell the patent office about Mr. Oka's prior patent when it was pursuing the 980 patent? I objected. That was the time for the court to hear our objections that this was irrelevant and prejudicial. But the judge denied the objection by overruling it without asking counsel to comment on it one way or the other. That was the message to us. They were headed down a road of misconduct and prejudice without the opportunity to really oppose it. Was the reason that the district court delayed its ruling because it wanted to see if counsel could lay a foundation for an allegation of inequitable conduct? I think that's what the judge was doing. That is, he was saying, I will allow you to ask questions to see if you can develop facts to support inequitable conduct. But that's prejudicial and it's irrelevant facts. And if you look at it from our perspective, look at this question. Was there any discovery on this issue? Not that I have. Well, yes, there was. They argued, for example, let's look at the chart, the demonstratives that defendants used at page 31. Note that they presented testimony about what art was provided by, not provided by deer. That's the right-hand column. There was discovery on this. On the M&W, they asked Mr. Oaks, the patent prosecuting attorney, was he aware of the M&W and he said no. They asked the inventor, Mr. Friesen, what priority he was aware of and he didn't identify the M&W. So there was discovery on that. And they had no good faith basis for believing that either of the two people who prosecuted the patent, the inventor or the lawyer, were aware of the M&W. Well, your expert actually testified that he was aware of the prior patents. But then, I guess that evening, you filed a declaration that changed that and that's when you filed your motion in limine as well. Actually, it wasn't our expert, it was another engineer. Okay. And he testified he had no involvement in the prosecution of the patent. So whether he was aware of the M&W or not is irrelevant. And if you look at the, let me give you another example, Your Honor. The second piece of work down there, below there, is not provided or considered by the examiner. It suggests that Deere was aware of the prior gun-missing. There's no evidence that anybody at Deere was aware of gun-missing at the time the patent was being prosecuted. So you ask whether there was discovery on this issue. They had a full chance to take discovery. They didn't plead an equitable conduct, yet they tried an equitable conduct case. If you look at it from our perspective, how do we respond to this question that I identified a minute ago? That is, Mr. Oka's patent wasn't disclosed by Deere. Do we argue that it's not material? Do we argue that there was no notice that these people had the intent to deceive? That they were even aware of the Oka patent? We have no ability to really respond to this. And the objection in front of the jury each time to this misconduct just poisons the jury against us anyway. So as we noted in our brief, it's up to the judge to protect us from this. And we renewed our motion a number of times. We renewed our motion in one context or another about seven times. The judge ruled against us seven times. All right, let's hear from the other side, Mr. McKelvey. We'll save you a couple of times. Mr. Martin. Yes. May it please the court, my name is Craig Martin. I represent one of the three defendants, Dorak, that was tried during this jury trial in Iowa. The other two defendants are separately represented, and they each reserve one minute if there's something that we don't cover. Mr. Martin, please speak up. That's what one of my colleagues told me, too. So I'll try to speak up. You should listen to your colleague. I should. Very wise colleagues. In terms of, so I'm Craig Martin, I represent Dorak. Basically, let me get to the issues. After losing a three-week jury trial on anticipation, obviousness, written description, and infringement, after 95 hours of testimony, 3,000 pages of transcript, 668,000 words typed up according to my estimates, with 25 witnesses testifying, Deere now seeks to ask for a new trial and seeks to overturn and undo the jury's verdicts based on what they say is a couple of stray comments made by one or another. During the trial, were you pursuing a theory of inequitable conduct? No. What are the references then to duty of candor and inequitable conduct when you know that there's a pending motion in Lemony dealing with this particular issue? Sure. I realize that the judge hadn't ruled on it, but you as an officer of the court, shouldn't you be a little cautious as to reference this to something that you're not eventually going to prove? Absolutely. And in terms of just so that we've got it straight and clear, the words inequitable conduct are never used by us during the trial. But candor was used any number of times. Candor is used three times during the course of the trial, the words candor. And candor appears in the jury instructions as well, because the judge instructs the jury with regard to witnesses' credibility and candor and so forth and so forth, bias, et cetera, that you can look at candor. The words duty of candor, just to be absolutely clear, by agreement of the parties, the court showed a video at the outset of the case of video I'm sure you're very familiar with, in which the video goes through the process of obtaining a patent. And it says, here's the way you obtain a patent, here's the way the process works, there's the duty of candor and so forth and so forth, as well as a number of other things. It's the one with the big stacks of paper in it, if you've seen it. And during my opening statement, as I'm going through the opening statement and I'm explaining the patent, I say, and as you just heard during the patent video, there is also, this is the way the process works, and I use those three words. No objection anywhere to any of the times that I'm using those words. Did you use it again later? No. Duty of candor, never again. And in fact, the way the issue, it's probably important to put this in context so that you all understand what our basic view on this is, is look, this is a three-week jury trial with lots of stuff going on. And in terms of the number of questions that they object to today, but they didn't object to then, it's about eight, nine, ten questions by my count. In terms of the reality of what was going on in the courtroom and the reality of the case, it's much different than the reality that Deere would like you to believe here today. In terms of the way this issue comes up at the very beginning of the trial, there are two motions that are filed after opening statements. And here's the context. There is a, Deere did not decide, for reasons I have no idea why, did not call the inventor to testify at trial. And prior to the trial, they decided to use a fellow named Antonio Grande to testify as to the invention story. And we said, hey, he's not disclosed under Rule 26 as somebody who's going to testify about the invention story. We should get to take his deposition. The court said, no, we will require him to give you a declaration. And Mr. Grande, before the trial began, before openings or anything else, provided a declaration, and the declaration said, I was aware of the following prior art at the time of the invention. And one of the things that he said he was aware of was the M&W, which is critical to the case in terms of the anticipation argument and the obviousness argument. You're mumbling, speak up. Sorry, which is critical, I should take the advice of that colleague, which is critical to the anticipation case and the obviousness case. So Grande says, I'm aware of it. We do our openings. In fact, I do my opening, and I say, and you're going to hear from Mr. Grande, who's involved in the invention, and he's going to say he's aware of these three pieces of prior art. That evening, Deere sends over a corrective declaration of Grande that says he wasn't aware of the M&W. So we file a motion to bar Mr. Grande from testifying. They file a motion to bar inequitable conduct. We show up the next morning because the court's very careful. He's got a half an hour set aside every morning in order to clear out any issues. He's 28 years on the bench, 200 patent cases, Judge Wooley from Iowa. And Deere says, we can't have arguments of inequitable conduct. And the judge says, are you guys pursuing it? And I said, I shrug. Then he says, do you have an inequitable conduct defense? And I say, no. And then he says something like, I forget what his question was, and I say, we don't have evidence of inequitable conduct. It's not here. We never use those words during the case. Our motion then to bar Mr. Grande is denied. Now, the judge also, in denying it, says, hey, look, and I'll quote what the judge says, I will have to go question by question to determine whether the requested answer to the question pertains to inequitable conduct or might be relevant to some other issue. I think Deere's motion to change the case by eliminating any possibility of suggestion that your client is unethical or inequitable is too broad. And then the judge looks at us and he says, I'm denying your motion too. And I don't know why you trial lawyers make motions like this, because I would think you would relish the opportunity to cross-examine the guy who just flipped on his testimony. That's the way, that's why you get into this issue at the outset of the case. And then it's really not an issue in the case, because there's only one question, and Mr. McKelvey just highlighted the one question during Deborah Harrison's testimony, asked by one of the other defendants that says something about OCA being disclosed or not disclosed to the patent office. That's the single objection to a question. And then there's another motion to strike while Deere is cross-examining one of our expert witnesses. Now, it is, I think, really also important to understand the way the case begins to get this in context, because this is the briefs that are before you try to portray a false reality of what happened at a three-week jury trial. The case begins with Deere calling their first witness, and their first witness is a woman named Deborah Harrison. And Deborah Harrison testifies that she's the senior engineer for rotary cutters at the time of the invention. She testifies about Deere's motivation to develop this product. She testifies that she knows the inventor, and she also knows a guy named Ken Oka, who worked in the department at the time that they were developing this, and she tells the invention story. And she testifies, and during this testimony, Deere admits documents that had already been agreed would be in evidence. One is an invention disclosure, an internal Deere document that lists prior art. A second is the prosecution history, which I'm sure you're very familiar with, prosecution histories.  And then Ms. Harrison, as she's testifying, she reads those portions. She says, look, in the invention disclosure, this was the most important prior art. And then she testifies about the prior art that's listed in the invention disclosure, which includes the rhino, the bush hogs, and the woods brochures. And she says, well, the woods one was of interest, and the others really weren't of interest. So the very evidence that they complain about today, and they make a big deal about trying to take out of context, was put into the case by Deere at the very outset of the case. So it was crystal clear, juries are nuts. Juries are very wise. And they pay attention, in my experience, they pay attention to things. And it was obvious, not the way you all would use that term, but it was obvious, that this prior art was provided to the patent offices by Deere. Other prior art wasn't. And there's other prior art that's just out there that the patent examiner found. And that's really important. That was important to us, to be quite honest. That was important to us because we were pursuing theories along the I4I case and so forth. And we were essentially arguing to the jury that this is anticipated, obvious, no adequate written description. So Judge Reynolds, to go back to your question, absolutely. We were, not to overuse the word candor, we were as straightforward with the court as we could possibly be about what we intended to do and didn't intend to do. And Deere had every opportunity to object. And I'll give you an example. There was a rule that was put in place in the court by the very experienced trial judge. And he said, look, demonstrative exhibits, you've got to show everybody your demonstrative exhibits 24 hours in advance. And then when you get there in the morning, if there's any objections, we'll go through it. Well, one of the demonstrative exhibits that Deere highlights in their brief is this one. And what it says is what's considered by the patent office, what was provided by Deere, what the patent examiner found, and then it says what wasn't considered by the patent examiner. That information comes straight out of the invention disclosure, the prosecution history, and other prior art that our experts are putting on during trial. Does Deere object to any of the language on our demonstrative exhibit? No, not whatsoever. So now they come to court and they take a handful of questions that are asked by different lawyers representing different defendants saying things like, well, was that before the patent office? They said, well, I should have objected. I wish I could have objected to that because it would have poisoned the jury if I did. But it just doesn't ring true in the context of this case. And in terms of, so that's the way the case started out. And basically, look, I tell everyone that jury trials depend on the nature and quality of the witnesses and the nature and quality of the evidence. And the judge, Deere made a very similar argument in post-trial. And the judge, by the way, found that Deere forfeited that argument, which was not in their opening brief. And here's what the judge said about the trial. It is apparent from the jury's special verdicts and the court's observations during the trial that the jury found credible the defendant's expert witnesses and not Deere's expert witnesses. You know, sometimes you win trials and sometimes you lose trials, but you usually win and lose on the basis of the credibility of the witnesses. And as we pointed out in our brief, each of Deere's witnesses, they were impeached. They testified inconsistently. They fought the documents. They tried to walk away from emails. And we pointed that out robustly to the jury. With regard to the point that Mr. McKelvey was making about infringement, Deere had the burden of proof. And by the way, I will tell you right now that our strong arguments, our strongest arguments are, I love all my children equally, but it's obviousness and anticipation and inadequate description and infringement. They're all great arguments. Can I have 20 seconds of one of my colleagues' time so that I can finish the point? With regard to infringement, Deere had the burden. Deere actually did not even compare the product at issue to the patent. They failed to meet their burden of proof. We demonstrated when we cross-examined their expert who testified for a total of eight hours, that he had not even considered slope in forming his opinions. And we cross-examined him to the point that I would submit, and the judge would support this, I think, that he was found not credible. So Deere just blatantly failed to meet their burden of proof at a three-week jury trial. And now they want to undo it by some casual references that they say amounts to inactable conduct. This, I submit to you, was a just trial. It was a fair trial, and it was presided over by a very experienced federal judge who controlled that courtroom. Thank you. Thank you, Mr. Martin. Mr. Hesney? Mr. Brown, Your Honor. Scott Brown, appearing on behalf of Great Plains Manufacturing. You have one minute. Please talk fast. I will, Your Honor. On this appeal, Deere has not urged that Great Plains' non-infringement jury verdict would lack substantial evidence. On this appeal, Deere has not urged that Great Plains' non-infringement jury verdict was against the great weight of the evidence. So even if this court determines that Deere preserved for appeal the error that it assigns now, this court would have to find that what the federal judge said were scattered bits of evidence and argument in a voluminous trial record resulted in a miscarriage of justice. Under the Eighth Circuit standard for a miscarriage of justice, the court would have to find that there was insufficient evidence to support the non-infringement verdict, a showing that Deere has not attempted to make on this appeal. Consequently, although we believe for all the reasons that our co-defendants have urged, all of these verdicts should be affirmed. At a minimum, the court should affirm Great Plains' non-infringement verdict,  so that's my submission, unless the panel has any questions. Thank you. Your Honor, if you'll permit me to speak from behind the bar. I'm Mr. Haney, and I represent LLSE. If I have one minute, Mr. Barnes will remain on stand. Okay. Okay. In that case, Mr. McKelvey. We didn't hear a defense of the stray comments that counsel made about how the Patent Office was treated, about how Deere failed to provide art to the Patent Office. We didn't hear them respond to this issue of how do we deal with questions that pose to witnesses the question of whether art was provided to the Patent Office without dealing with the issue of whether it was material prior art or not material prior art. How do we respond to the issue of alleged inequitable conduct contending that we intended to mislead the Patent Office? The jury didn't get instructed on any of these issues, and the trial court was mistaken to allow these questions to go forward. If you look at the judge's decision after trial, he tried a number of different things about the questions. That is, they weren't relevant, or maybe they were relevant. And he didn't want to call attention to the subject. Remember the objection that we had on the 12th day of trial where he said that the allegations of failure to provide art to the Patent Office was the pink elephant in the room during the trial, and that he didn't want to address it to the jury. So we ended up going to the jury on issues that were not relevant, that are highly prejudicial and unfair to us, and it spilled over to the balance of the case. And it's correct that we did not argue in the brief that we're entitled to reversal of the judgment of non-infringement by Great Plains. But we do think that part of the prejudice was reflected in that verdict, and that it should go back to the jury also. I'd like to argue about the obviousness for a minute, but I think my time is probably up. I can do it. I can try it. The defendants went into the trial with two witnesses, one from each of the defendants, saying that people in the rotary cutter business would not look to lawnmowers for the purpose of deciding how to design a rotary cutter. So they had a problem about motivation to combine. They couldn't offer proof of motivation to combine. So what did they do? They didn't offer proof of motivation to combine. And they asked the court to give an instruction that didn't include a requirement that the jury look to motivation to combine. That's also error that the court should reverse. Thank you. Any further questions? No questions. Thank you. Thank you all. The case is taken on your submission.